## BALTIMORE CITY COURT.

Filed December 12, 1908.

### LEON LAUER
### VS.
### THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Leon E. Greenbaum* for plaintiff.

*W. H. DeCourcy Wright* for defendant.

SAMS, J.—

Motion to quash the proceedings of the Commissioners for Opening Streets in opening Bentalou street under Act of 1904, Chapter 274, so far as the same relate in any way to the assessment of benefits upon the property owned by the appellant.

In 1904 the General Assembly of Maryland adopted an Act known as Chapter 274. The title of the Act sets forth, with some particularity, its purposes and objects. In brief, it is known as the "Annex Improvement Commission Act." The Act provided for a commission to carry out its purposes.

Section 1 authorized the Mayor and City Council to issue stock to the amount of $2,000,000, the proceeds of the sale of which "shall be used only for the purpose of providing the costs and expenses of condemning and opening, grading, paving and curbing the streets, etc., of the Annex."

Section 2 provided for the appointment of the commissioners.

Section 3 provided that the commission shall have the right and power to condemn any street and all powers necessary and proper in the exercise of such power and the Mayor and City Council was authorized and empowered to grant by ordinance any further powers and duties it shall deem necessary for the proper execution of the improvements intended to be made.

Section 4 provided that the commission should be the agent of the Mayor and City Council to acquire by condemnation any private property that may be required to open any street, and conferred authority upon the Mayor and City Council to provide by ordinance the proceedings for a condemnation of property.

Section 7 empowered the commission to make contracts for the work of opening, grading, curbing and paving the streets, the costs and expenses of the work to be paid out of the loan.

Section 10 is in this language: "Provided, however, in lieu of said commission hereinbefore provided for in Section 2 of this Act, the Mayor and City Council may by ordinance authorize and empower the Commissioners for Opening Streets of Baltimore, to perform the duties anad functions in this bill heretofore provided for said commission." In execution of the power thus conferred upon the city by this act the Mayor and City Council adopted an ordinance known as Ordinance No. 216, approved March 6, 1905. By Section 6 of said Ordinance, the Commissioners for Opening Streets are authorized, empowered and directed to perform the duties and functions provided in the Act of 1904, Chapter 274, for the "Annex Improvement Commission." By Section 7 of the same ordinance it is provided: "In condemning, laying out, opening, extending, widening or closing streets, etc., * * * under Act of 1904, Chapter 274, the procedure of the Commissioners for Opening Streets, * * *

shall be that now or hereafter prescribed by law in relation to their ordinary duties and powers of the same nature * * *."

There is no contention that the city in passing this ordinance exceeded the powers granted to it under Sections 3, 4 and 10 of said Act.

It is to the Act of 1904 and to the Ordinance No. 216 that we must look, in order to find if the power is given to the Commissioners for Opening Streets, acting in the capacity of the Annex Improvement Commission, to assess for benefits.

The powers given under the Act of 1904, Chapter 274, are sweeping and unrestricted, broad and unqualified, for an example it says, "that the said commissioners shall have the right and power * * * to condemn, grade and pave any street, lane in the annex portion of Baltimore" and "it shall have all the powers necessary and proper in the exercise of said powers."

It will be noted that the Act nowhere defines the "cost" of condemnation, although in Section 7 it specifically provides that the contract price for opening, grading, paving and curbing shall be the cost thereof, and be paid out of the loan.

In the absence of anything in the Act of 1904, defining what the cost of condemnation is, I have concluded that such cost is the difference between the damages and the benefits assessed.

After a careful consideration of the arguments and reading all the authorities bearing upon the question, I have reached the following conclusion:

First: That the Mayor and City Council by passing Ordinance No. 216, approved March 6, 1905, adopted all provisions of existing laws relating to the proceedings of the Commissioners for Opening Streets, which includes those provisions directing that property benefited by improvements shall be assessed for such benefit.

Second: The Act of 1904, Chapter 274, is pari materia with the City Charter and the public local laws of Baltimore City, relating to opening, grading and paving highways, and where possible therefore they should be construed together, and as if they constituted but one statute.

The principle that statutes in pari materia must be construed together, that is, as if they constituted but one statute, has been frequently applied by the Court of Appeals. Repeals by implication are disfavored, and if possible different statutes will be harmonized. Bolgiano vs. Cook, 19 Md. p. 393; Ranoul vs. Griffin, 3 Md. p. 54; Billingslea vs. State, 14 Md. p. 376. See, also, note to Alexander vs. Worthington, 376, 5 Md. pp. 472 and 473.

In Hamilton on Special Assessments, Section 196, page 143, the following language is found:

"Where, in a code of laws relating to a particular subject, a general policy is plainly declared, special provisions should, when possible, be given a construction which will bring them in harmony with that policy."

And in Lewis' Sutherland on Statutory Construction, Section 581, page 1072, we read as follows:

"After a statutory system or policy has been long established and is well defined, it will not be lightly presumed to be departed from or abandoned. General language will be restricted to bring the act in harmony with it. Equivocal words will not be accepted as implying an intent to depart from a settled statutory policy. General words are not to be so construed as to alter the previous policy of the law, unless no sense or meaning can be put upon them consistently with the intention of preserving the existing policy untouched."

Third: That by the passage of the Act of 1904, Chapter 274, no departure is made from the system which has been pursued by the city for a very long number of years and which system has been approved all over the country. For a long time the city has assessed property in condemnation proceedings for benefit resulting from the opening of a new street.

The Act of 1904, Chapter 274, did not create a new, independent government, but established a new agency of the municipality through and by means of which certain functions of city administration were to be carried on within a prescribed territory of the city.

Section 2 of the act contains a grant of certain enumerated powers to be exercised by the agency there created. Powers to assess benefits is not one of the powers expressly granted, but the

same section further provides that: "The commission shall have all powers necessary and proper in the exercise" of the expressly granted powers.

When the long established practice in this city is borne in mind in regard to the assessment of benefits, a practice sanctioned by judicial interpretation for years, there can be no doubt that the power to assess benefits is entirely proper, and in most cases a necessary power to be exercised in connection with the laying out, opening, extending, widening, grading, paving or curbing of streets.

Fourth: To construe the Act of 1904, Chapter 274, so that property improved under its provisions should not be assessed for benefits would be in effect giving such property a special exemption. All exemptions from taxation are strictly construed. That exemptions of that character are not allowed unless provided for in clear language under the act by which the exemptions are claimed is a legal proposition well known.

Exemptions, no matter how meritorious the cause, are of grace and must be strictly construed."

That such exemptions are strictly construed will be seen by a few quotations from cases in the Maryland Reports.

A company which by its charter is exempted from the payment of "any tax or public imposition whatever" is not exempt from liability for an assessment for paving the street in front of the company's property. Greenmount Cemetery case, 7 Md. 517.

For the same reason an assessment of benefits for opening or widening streets would not be embraced in such an exemption. Dolan vs. City, 4 Gill, 394; Zion Church vs. City, 71 Md. 394.

In Alexander vs. City, 5 Gill, 383, it was said, that an ordinance exempting property from assessment for benefits would be void, if the property so exempted was in fact benefited.

The motion to quash and set aside the proceedings of the Commissioners for Opening Streets in opening Bentalou street under the Act of 1904, Chapter 274, so far as the same relate to the assessment of benefits, will therefore be overruled.